OPINION
Plaintiff-appellant, Union Township, Clermont County, Ohio, ("the Township") appeals the decision of the Clermont County Court of Common Pleas denying its motion for a preliminary injunction to prohibit defendants-appellees, Union Township Professional Firefighters' Local 3412 ("Local 3412"), James Watkins, and Spencer Thomas (collectively "appellees"), from pursuing grievance arbitration proceedings stemming out of the Township trustees' decision to terminate Watkins and Thomas from the Union Township Fire Department ("UTFD").
The Township is a public employer subject to R.C. Chapter 4117. On May 15, 1996, the Township entered into a Collective Bargaining Agreement ("CBA") with Local 3412 on behalf of the firefighters employed by the UTFD. The CBA was effective through May 14, 1999. Watkins and Thomas were firefighters employed by the Township as part of the UTFD when the CBA was adopted. Watkins was the president of Local 3412.
On February 1, 1999, Chief Stanley Deimling of the UTFD provided information to Ken Geis, the Township administrator, recommending discipline against Watkins and Thomas. The recommendation arose out of Watkins and Thomas' refusal to give information concerning alleged public misconduct by another UTFD employee. Both men alleged that to do so would reveal confidential union information. Geis notified Watkins and Thomas of a pre-disciplinary hearing to be conducted by Geis on February 18, 1999. Following that hearing, at which both men refused to disclose the sought-after information, Geis advised the Township trustees in writing regarding the proposed discipline against Watkins and Thomas.
On March 9, 1999, a hearing was held before the Township trustees with respect to the proposed disciplinary action. Evidence was presented at the hearing, and both Watkins and Thomas were present and represented by counsel. At the conclusion of the hearing, the Township trustees unanimously voted to terminate Watkins and Thomas' employment with the UTFD.
On March 15, 1999, Watkins and Thomas filed separate formal grievances with Captain Dreyer of the UTFD through Local 3412. Grievance proceedings within Local 3412 proceeded according to the CBA grievance procedures. After the initial three steps of review failed to resolve the grievances, Watkins and Thomas, and Local 3412 as their representative, demanded arbitration of the grievance claims. On March 24 and April 6, 1999, the Township notified counsel for appellees that the Township felt that the grievance claims were not arbitrable under the CBA. In the April 6, 1999 letter, Geis expressly denied the grievances, stating that appellees' only recourse was to appeal the trustees' decision to the court of common pleas.
On April 20, 1999, appellees' counsel sent a letter to Geis contending that the grievances were arbitrable under the CBA. In that letter, they asserted that appeal to the court of common pleas was not the sole remedy under the CBA. Appellees requested that the Township submit a list of acceptable arbitrators so that arbitration proceedings could begin. The Township has yet to submit the requested list of arbitrators.
On June 23, 1999, the Township filed a complaint in the trial court against appellees seeking declaratory judgment that, under the CBA, appeal to the court of common pleas was the sole remedy for Watkins and Thomas' termination by the trustees. The Township also sought a preliminary injunction to prohibit appellees from instituting any arbitration proceedings. On July 16, 1999, the Township filed a motion for a preliminary injunction to prevent appellees from proceeding to arbitration.
On July 26, 1999, appellees filed an answer and counterclaim. In their counterclaim, appellees requested that the court dismiss the complaint, find that the grievances were arbitrable under the CBA, and order the Township to participate in arbitration under the CBA. On July 29, 1999, appellees filed a memorandum in opposition to the Township's motion for a preliminary injunction. On August 11, 1999, the Township filed a reply to appellees' counterclaim.
On July 30, 1999, the trial court held a hearing on the Township's motion for a preliminary injunction. On August 6, 1999, the trial court filed a lengthy decision denying the motion. In its decision, the trial court found the CBA arbitration clause did not include language expressly excluding grievances from the arbitration procedures in the CBA. The trial court found that the Township was unable to establish by clear and convincing evidence any of the elements necessary to issue a preliminary injunction. The Township appeals, raising a single assignment of error:
 WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR PRELIMINARY INJUNCTION.
In its assignment of error, the Township contends that the trial court erred by denying the motion for a preliminary injunction. The Township asserts that it proved that it was likely to be successful on the merits of its claim against appellees and that it would suffer irreparable harm if the preliminary injunction is not issued.
The purpose of a preliminary injunction is to preserve thestatus quo pending a resolution of the case on the merits. Yudinv. Knight Industries Corp. (1996), 109 Ohio App.3d 437, 439, discretionary appeal not allowed, 76 Ohio St.3d 1495. A trial court's decision to grant or reject a request for injunction is a matter solely within that court's discretion. A reviewing court should not disturb the judgment of the trial court in the absence of a clear abuse of discretion. Danis Clarko Landfill Co. v.Clark Cty. Solid Waste Mgt. Dist. (1995), 73 Ohio St.3d 590, paragraph three of the syllabus.
In ruling on a motion for a preliminary injunction, the trial court must consider "whether (1) the movant has shown a strong or substantial likelihood or probability of success on the merits, (2) the movant has shown irreparable injury, (3) the preliminary injunction could harm third parties, and (4) the public interest would be served by issuing the preliminary injunction." Johnsonv. Morris (1995), 108 Ohio App.3d 343, 352, appeal dismissed (1996), 76 Ohio St.3d 1404. Each element must be proven by the movant by clear and convincing evidence. Vanguard Transp. Sys.,Inc. v. Edwards Transfer Storage Co., Gen. Commodities Div.
(1996), 109 Ohio App.3d 786, 790, discretionary appeal not allowed, 76 Ohio St.3d 1495. Clear and convincing evidence is that degree of proof which produces in the mind of the trier of fact "a firm belief or conviction as to the allegations sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
In resolving whether the movant has demonstrated a likelihood of success by clear and convincing evidence, the movant must support its claim through the strength of its own case, not by any weakness in the nonmoving party's case. Cleveland Constr., Inc.v. Ohio Dept. of Adm. Serv., Gen. Serv. Admin. (1997), 121 Ohio App.3d 372,383, discretionary appeal not allowed, 80 Ohio St.3d 1426. It is within the trial court's discretion to make a reasonable determination whether an adequate remedy at law is available or whether irreparable injury will result to the movant if no injunction is issued. Dayton Metro. Hous. Auth. v. DaytonHuman Rel. Council (1992), 81 Ohio App.3d 436, 442, jurisdictional motion overruled, 65 Ohio St.3d 1457. "Irreparable harm" is defined as an injury "for the redress of which, after its occurrence, there could be no plain, adequate and complete remedy at law, and for which restitution in specie (money) would be impossible, difficult or incomplete." Cleveland v. ClevelandElec. Illum. Co. (1996), 115 Ohio App.3d 1, 12, appeal dismissed (1997), 48 Ohio St.3d 1419. Issuance of a preliminary injunction is appropriate "where the [movant] fails to show a strong or substantial probability of ultimate success on the merits of [its] claim, but where [the movant] at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to [the non-moving party] if an injunction is issued." In re DeLorean Motor Co. (C.A.6, 1985), 755 F.2d 1223,1229.
At the preliminary injunction stage, the trial court is not required to resolve "doubtful or difficult questions of law or disputed questions of fact." Montgomery v. Carr (S.D.Ohio 1993),848 F. Supp. 770, 775, quoting Intl. Molders' and Allied WorkersLocal Union v. Nelson (C.A.9, 1986), 799 F.2d 547, 551. Nonetheless, either before or after the commencement of the hearing on the motion for a preliminary injunction, the trial court may order that a trial on the merits be advanced and consolidated with the hearing on the application. Civ.R. 65(B)(2). Before the trial court may order such consolidation or resolve the case on its merits, the trial court must give notice to the parties of its intent to consolidate the matters. Turoffv. Stefanac (1984), 16 Ohio App.3d 227, 228-229.
We first note that the record does not contain any indication that either party or the trial court sought to consolidate the hearing on the motion for a preliminary injunction with a hearing on the merits of the Township's claim. Therefore, our review solely concerns the trial court's decision to deny the motion for a preliminary injunction. In no way should our opinion or the decision of the trial court be read as addressing or deciding the merits of the Township's claims.
In the instant case, the management rights that the Township reserved for itself pursuant to R.C. 4117.08(C) are included in CBA Section 5.1:
 The Employer [the Township] reserves the right to manage Township business — direct the working forces, control the premises, and maintain efficiency of operations. Specifically, those rights include, but are not limited to, the following:
 1. To hire, discipline, suspend, terminate, or reduce in pay or position any Township employee.
Disciplinary procedures are set forth in CBA Article 13. CBA Section 13.1 provides:
 The Employer may take disciplinary action against any employee in the bargaining unit for just and sufficient cause. Grounds for discipline include violations of established standards of conduct, and commission of any act or offense which any reasonable person should know to be wrong, inappropriate, or so egregious that discipline or discharge is likely to occur.
CBA Section 13.2 provides:
 Discipline will be applied in a progressive and uniform manner. Progressive discipline shall take into account the nature of the violation, the employee's record of performance and conduct and any prior discipline. Disciplinary penalties shall be appropriate to the offense, and as such the forms of discipline listed in this Section do not necessarily represent a systematic order to be followed in all instances.
Disciplinary procedures are provided for in CBA Article 13:
 Section 13.4. When it becomes known that an employee may have committed an offense which could lead to suspension, demotion, or discharge, the Fire Chief shall so inform the Township Administrator, who shall conduct a pre-disciplinary conference prior to presentation of proposed discipline by the Board [of trustees].
 Section 13.5. Prior to any proposed suspension, demotion, or discharge, the employee shall be entitled to a hearing before the Board [of trustees] within thirty (30) calendar days of the Township Administrator's decision. At the option of the accused employee, the hearing shall be held either in open session or executive [closed] session. The accused may be represented by counsel or anyone of his choosing. Following the presentation of all evidence and testimony, the Board shall determine what discipline, if any, is appropriate. In the event the Board imposes a suspension, demotion, or discharge, the employee may appeal such action to the Clermont County Court of Common Pleas within ten (10) days of issuance of the discipline.
The grievance procedures are set forth in CBA Article 14. CBA Section 14.1 provides:
 The term "grievance" shall mean an allegation by a bargaining unit employee that there has been a breach, misinterpretation, or improper application of this Agreement.
CBA Section 14.3 provides the procedural steps an aggrieved party must follow in presenting his grievance. These include properly submitting the grievance to the grievant's captain, presenting the grievance to the grievant's fire chief if the grievance is not resolved by the captain, and if the grievance is still not resolved, presenting the grievance to the Township Administrator for a hearing. CBA Section 14.3, then provides:
 Step 4. Arbitration. A grievance unresolved at Step 3 [by the Township Administrator] may be submitted to arbitration upon request of the Union in accordance with this Section of this Article.
 The Union, based upon the facts presented, has the right to decide whether to arbitrate a grievance. Within twenty (20) calendar days from the date the final answer at Step 3 is received, the Union shall notify the Employer [the Township] of its intent to seek arbitration over the unresolved matter. The Union may withdraw its request to arbitrate at any time prior to the actual hearing. * * * Any grievance not submitted within the twenty (20) calendar day period described above shall be deemed settled on the basis of the last answer given by the Employer's representative(s).
 A. * * * The arbitrator shall limit his decisions strictly to the interpretation, application, or enforcement of specific articles in this Agreement. He may not modify or amend the Agreement.
 B. The question of arbitrability of a grievance must be raised by either party before the arbitration hearing of the grievance, on the grounds that the matter is non-arbitrable or beyond the arbitrator's jurisdiction. If the arbitrator determines the grievance is within the purview of arbitrability, the alleged grievance will be heard on its merits before the same arbitrator.
 C. The decision of the arbitrator in all matters shall be final and binding. The arbitrator shall be requested to issue his decision within thirty (30) days after the conclusion of testimony and argument.
In denying the Township's motion for a preliminary injunction, the trial court focused upon its finding that the Township failed to prove a substantial likelihood of success on the merits of its claim. In making its decision, the trial court relied upon the distinctions between the instant case andStillings v. Franklin Township Bd. of Trustees (1994), 97 Ohio App.3d 504.Stillings noted that arbitration clauses are of two types:
 (1) Unlimited clauses providing for arbitration of all disputes that may arise out of the parties' contractual relationship, and (2) limited clauses providing for arbitration of only specific types of contractual disputes.
 Id. at 508. Where there is ambiguity as what type of arbitration clause is contained in an agreement, or whether arbitration is applicable, all doubts must be resolved in favor of arbitration. Neubrander v. Dean Witter Reynolds, Inc.
(1992), 81 Ohio App.3d 308, 311; Stillings,97 Ohio App.3d at 507-508. As a result, the general rule is that there is a strong presumption in favor of arbitrability when interpreting an arbitration clause. Id. This presumption may be rebutted by evidence of an express exclusion or "the most forceful evidence of a purpose to exclude the claim from arbitration."Intl. Broth. of Teamsters, Chauffeurs, Warehousemen andHelpers of America, Local Union 20 v. Toledo (1988), 48 Ohio App.3d 11,13.
The arbitration clause at issue in Stillings was of the limited type. The definition of "grievance" subject to arbitration in that collective bargaining agreement expressly excluded "any matters reserved to public employers under [R.C.]4117.08[,]" matters which included the right to "[s]uspend, discipline, demote or discharge for just cause[.]" Stillings,97 Ohio App. 3d at 507. As a result, disciplinary actions were expressly excluded from the relevant arbitration clause in theStillings collective bargaining agreement. Id. at 507. By contrast, in the instant case, there is no language included in CBA Section 14.1 to expressly limit the definition of "grievance" to non-disciplinary matters.
Watkins and Thomas' grievances were framed to assert that it was the trustees' decision to terminate them that violated the terms of the CBA. Both men contended that the trustees' action violated CBA Sections 13.1 and 13.2, because the decision to discharge was without "just and sufficient cause." Both men further argued that the trustees' decision violated the CBA non-discrimination policy embodied in CBA Sections 6.2 and 6.3.[1] They alleged that a non-union employee who had refused to disclose the same information known by Watkins and Thomas was not terminated. Both men contended that the trustees' imposition of discipline was neither appropriate to the alleged offenses nor applied in a uniform manner, and that the conduct underlying the alleged offenses was not such that a reasonable person would have expected disciplinary proceedings to result.
The Township argues that, regardless of how the grievances are framed, the disciplinary procedures set forth in CBA Section 13.4 correspond to the text of R.C. 505.38(A), which provides, in pertinent part:
 In case of removal of a fire chief or any member of the fire department of a township or district, an appeal may be had from the decision of the board [of trustees] to the court of common pleas of the county in which such township or district fire department is situated, to determine the sufficiency of the cause of removal. Such appeal from the findings of the board shall be taken within ten days.
The Township asserts that when reading CBA Section 13.4 in light of the statute, it is clear that appellees' only recourse from the trustees' decision was to appeal to the court of common pleas.
Appellees' respond that the failure of the Township to include the phrase "to determine the sufficiency of the cause of removal" in Section 13.4 creates an ambiguity regarding whether appellees were required to appeal to the court of common pleas, file a grievance with Local 3412, or whether they had the option of choosing which procedure to follow. Appellees contend that the missing phrase tends to define the jurisdiction of the court of common pleas in an appeal, and the failure to include it removes the requirement that only an appeal from the trustees' decision is available to an aggrieved party.
Appellees support their argument with the proposition that "grievance" is broadly defined in CBA Section 14.1 to include any claim that there has been "a breach, misinterpretation, or improper application" of the CBA. Appellees point out that their grievances contend that the trustees' decision was a breach and misapplication of the CBA because the decision was allegedly discriminatory, without just and sufficient cause, and inappropriately severe in its sanction. Appellees conclude that because the Section 13.4 does not include any phrase defining the purpose of an appeal from the trustees' decision, and because the definition of grievance in Section 14.1 does not exclude disciplinary actions as a basis for a grievance, Watkins and Thomas were entitled to file grievances and pursue arbitration.
In this respect, this case presents a situation similar to that presented in Ohio Patrolman's Benevolent Assn. v. Lordstown
(1997), 118 Ohio App.3d 9, discretionary appeal not allowed,78 Ohio St.3d 1496. In that case, as here, the collective bargaining agreement did not expressly exclude from the grievance procedures disciplinary matters and other matters reserved by statute to township authorities. Nor, as here, was there a definition of "just and sufficient cause" included in the collective bargaining agreement regarding what conduct was subject to disciplinary action. The Lordstown court first found that the relevant statute in that case, R.C. 737.19(B), already included the requirement that "just cause" was required before suspending or terminating an employee. That court determined that the inclusion of "just cause" in the collective bargaining agreement demonstrated an intent that "just cause" under the agreement mean something other than that required by the statute. Id. at 12. Because the agreement did not include a definition of "just cause," any controversy regarding whether there was such cause to suspend or terminate the employee was a matter of interpreting the agreement, a matter expressly reserved to the arbitrator. Id.
In the instant case, CBA Section 5.1 expressly reserves to the Township all rights of management and discipline guaranteed by R.C. 4117.08(C). CBA Section 13.1, concerning disciplinary matters, provides that the township may terminate any employee for "just and sufficient cause." Although it may be implied that Section 13.1 imposes upon the Township a requirement of "just cause" already imposed by R.C. 505.38(A),[2] there is no statutory provision expressly imposing a "just cause" requirement upon the Township when disciplining its firefighters. As a result, there is no relevant provision indicating what is meant by "just and sufficient cause." Without further proof being provided by either party, we must assume that the parties intended that "just and sufficient cause" must have some substantial meaning and effect and that it should be "interpret[ed] * * * as intend[ing] to accomplish some purpose." Lordstown, 118 Ohio App.3d at 12. Due to the lack of a definition of "just and sufficient cause," we are led to conclude, as did the Lordstown court, that the CBA might be reasonably interpreted to require that whether there was "just and sufficient cause" is a matter to be reviewed by an arbitrator.
This conclusion is only bolstered by the fact that Section 13.5, which provides for the appeal of a disciplinary decision by the trustees to the court of common pleas, varies from the language of R.C. 505.38(A). R.C. 505.38(A) expressly provides what matters may be appealed "to determine the sufficiency of the cause of removal." Section 13.5 does not include any language stating or implying that such a matter is one which must be appealed to the court of common pleas.
More important, unlike the grievance exclusion in Stillings, the CBA definition of "grievance" is very broad. "Grievance" is defined by Section 14.1 to include any claim that there has been "a breach, misinterpretation, or improper application of this Agreement." Such a provision would seem to be an "unlimited clause providing for arbitration of all disputes that may arise out of the parties' contractual relationship." Stillings,97 Ohio App. 3d at 508. Watkins and Thomas' grievances of the trustees decision were framed to assert that their termination was without "just and sufficient cause" as required by Section 13.1 and a breach of the non-discrimination mandates in Article 6.
At this stage of the proceedings, there is ample ambiguity regarding the effect of the CBA upon appellees' grievances. The intent of the parties in drafting these provisions is unclear. It would not be unreasonable to find that, when read as a whole, the CBA requires that decisions of the trustees regarding disciplinary matters be appealed in accordance with Section 13.5, and that grievance procedures were not intended to include disciplinary matters. In support of this argument by the Township, it is worth noting that to define "grievance" as broadly as suggested by appellees could render virtually meaningless that part of Section 13.5 requiring that decisions of the trustees may be appealed to the court of common pleas.
Appellees' position is also a reasonable interpretation of the CBA. The failure to include some but not all of the language of R.C. 505.38(A) can be interpreted as a conscious and reasonable choice by the parties to abrogate that part of the statute. Such a deviation from the statutory scheme is allowable as to disciplinary matters. R.C. 4117.08(C) and 4117.10(A). Under such an interpretation, it is not unreasonable to find that the parties meant to broadly define "grievance," thus providing aggrieved employees the option of appealing to the court of common pleas or filing a grievance through Local 3412 and pursuing arbitration where it is alleged that a breach, misinterpretation, or misapplication of the CBA has occurred. It may also be reasonable to find that the parties intended that the meaning and application of "just and sufficient cause" are matters best left for the arbitrator to review.
Because either party's interpretation may be found reasonable upon further inquiry, the trial court was correct in stating that it could not state with "positive assurance" that the CBA arbitration clause was "not susceptible to an interpretation that covers the asserted dispute." Didado v. Lamson Sessions Co.
(1992), 81 Ohio App.3d 302, 304, appeal dismissed, 64 Ohio St.3d 1426. We find that the trial court was correct in finding that the Township failed to present clear and convincing evidence that it was likely to succeed on the merits.
Nor did the trial court err in finding that the Township failed to present clear and convincing evidence tending to establish irreparable injury should a preliminary injunction not be issued, or any evidence that it was in the interest of public policy to issue a preliminary injunction. As the trial court's decision did not discuss harm to third parties which could result from granting or not granting the preliminary injunction, we must assume that no such harm was found by the trial court.
The Township will not suffer irreparable injury should an injunction not be issued and the case eventually proceeds to arbitration. At most, the Township will be forced to participate in arbitration. The Township may initially contest the arbitrator's jurisdiction pursuant to CBA Section 14.3(A). Should the arbitration award be against the township, it may appeal and challenge the arbitrator's jurisdiction pursuant to R.C.2711.10(D). Thus, adequate remedies at law exist to alleviate any inconvenience caused to the Township. Nor can the Township claim that it is irreparably harmed by incurring legal fees. The economic consequences of this action are not an irreparable harm as the Township may move for attorney fees at a later time, if such fees may be collected from appellees.
More important, at this stage of the proceedings there has yet to be a determination as to whether the CBA mandates arbitration of appellees' grievances, appeal to the court of common pleas, or a choice of these alternatives. At this time, there still remains the reasonable possibility that the trial court, after fully considering the merits of the case, will find that arbitration is not appropriate under the CBA. In such case, the Township will not have suffered any irreparable harm.
With regard to the final element necessary for the issuance of a preliminary injunction, the trial court correctly noted that public policy favors arbitration in general. Arbitration is especially encouraged in labor disputes. Lordstown,118 Ohio App. 3d at 11. It is assumed that there is a "greater institutional competence of arbitrators in interpreting collective-bargaining agreements, [which] `furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing collective bargaining.'" ATT Technologies, Inc. v.Communications Workers of America (1986), 475 U.S. 643, 650,106 S.Ct. 1415, 1419 (citations omitted). In light of the public policy favoring arbitration and the Township's failure to demonstrate any of the other prerequisites for a preliminary injunction, the Township was not entitled to the granting of a preliminary injunction against appellees.
We find that the trial court did not abuse its discretion in overruling the Township's motion for a preliminary injunction. The Township's assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.
[1] CBA Article 6, Section 6.2 provides:
 The Employer and the Union agree not to interfere with the desire of any person to become or refrain from becoming a member of the Union. The Employer shall not discriminate against or in favor of an employee because of his or her membership or non-membership in the Union.
CBA Article 6, Section 6.3 provides:
 The Employer shall not discriminate against any employee because of that employee's activity as an officer, steward, representative, or in any capacity on behalf of the Union.
[2] 505.38(A) provides that any appeal is solely to determine "the sufficiency of the cause of removal."